Brian S. King, #4610
Nediha Hadzikadunic
**BRIAN S. KING PC**
336 South 300 East, Suite 200
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
nediha@briansking.com

Attorneys for Plaintiff

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROBERT O. and NANCY S., individually and as guardians of J.O., a minor,<br><br>        Plaintiffs,<br><br>v.<br><br>HARVARD PILGRIM HEALTH CARE, INC., and UNITED BEHAVIORAL HEALTH dba OPTUM,<br><br>        Defendants. | COMPLAINT<br><br>Civil No.  2:17-cv-01251 PMW |

Plaintiffs Robert O. ("Bob") and Nancy S. ("Nancy"), individually and as guardians of J.O., a minor, through their undersigned counsel, complain and allege against Defendants Harvard Pilgrim Health Care, Inc. ("HP") and United Behavioral Health dba Optum ("UBH") as follows:

### PARTIES, JURISDICTION AND VENUE

1.      Bob and Nancy are natural persons residing in Essex County, Massachusetts. J.O. is Bob and Nancy's daughter.

2.      Bob receives a number of benefits through his employment including, but not limited to group health insurance coverage under the Plan. Bob is a participant in the Plan and J.O. is a beneficiary of the Plan.

3.      HP is a part of the nationwide network of affiliated Blue Cross and Blue Shield insurers and as a part of that network, can access preferred provider contracts between various Blue Cross Blue Shield entities and health care providers.

4.      UBH is the third party administrator for mental health claims under the Plan.  UBH is part of the United Health Care group and has a claims processing facility in the State of Utah.

5.      The Plan covering J.O. is an employee welfare benefits plan under 29 U.S.C. §1001 et. seq., of the Employee Retirement Income Security Act of 1974 ("ERISA").

6.      J.O. received medical care and treatment in Utah at Uinta Academy ("Uinta") a residential treatment facility in Cache County, Utah. Uinta is a licensed health care provider in Utah and provides treatment for adolescent girls with mental health conditions.

7.      This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

8.      Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, because HP and UBH do business in Utah and J.O.'s treatment was provided in Utah.  In addition, the Plaintiffs wish to preserve the confidentiality of the sensitive nature of J.O.'s treatment and believe the likelihood of success is enhanced by bringing their claim in the District of Utah.

9.      The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan and pursuant to 29 U.S.C. § 1132(a)(1)(B), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

## BACKGROUND FACTS

10.  Bob and Nancy adopted J.O. shortly after her birth. J.O.'s biological mother admitted using marijuana during her pregnancy but Bob and Nancy later learned that J.O. had tested positive for barbituates, hallucinogens, and PCP at birth.

11.  As a infant, J.O. suffered from reflux, chronic ear infections, and respiratory syncytial virus ("RSV") requiring hospitalization.  However, she met her developmental milestones earlier than average.

12.  J.O. had great difficulty going to, and staying, asleep and became easily agitated with prolonged periods of crying to the point where she was unable to breathe.  J.O. was evaluated for a sleep disorder and was subsequently referred for a behavioral evaluation.  She was diagnosed with attention deficit/hyperactivity disorder, combined type ("ADHD").

13.  An Individualized Educational Plan ("IEP") was recommended for J.O. when she was three years old.  Her problems with sleep had been addressed with some success and she was progressing with other developmental steps, but continued to have significant problems with self-regulation.  All of J.O.'s physicians and therapists recommended a highly structured environment for J.O.

14.  Bob and Nancy divorced when J.O. was four years old and Nancy was diagnosed with ovarian cancer soon after.  These disruptions were very traumatic for J.O. and she expressed significant anxiety about separation and death.  She was treating on a twice-weekly basis with a therapist.

15.  When J.O. started school, it became evident within the first week that her behavior was not sufficiently regulated to allow her to interact with her teachers and peers in a

positive way.  She was aggressive with other students and parents began complaining to the school about J.O.'s behavior.

16.    J.O. began taking medication to assist with her dysregulated symptoms and behavior but with limited success.  J.O. was evaluated on a number of occasions and more intensive treatment was recommended.

17.    J.O. was enrolled in an innovative program called Think: Kid and participated in that program for several years.  Bob and Nancy also worked with the program's doctor to maximize their chances of success in parenting J.O.

18.    As J.O. reached puberty and adolescence, her defiance, rage, and temper tantrums increased.  She expressed suicidal thoughts, was self-harming and was exhibiting eating-disordered behaviors.

19.    J.O. started a new school in 7th grade and her condition continued to deteriorate. Where she had been hyperactive before, she became lethargic and was increasingly isolated.  She was overwhelmed, depressed, and anxious.  She had no friends and frequently expressed suicidal thoughts.

20.    J.O.'s symptoms and behavior continued to deteriorate and she required emergency services and inpatient treatment and evaluation.  More intensive treatment was recommended by J.O.'s treating physicians and therapists, specifically residential treatment.

21.    During the time period that Nancy was investigating residential programs, J.O.'s behavior became more and more erratic and bizarre.  Nancy retained the services of a transport organization, Right Directions, to ensure J.O.'s safe travel to, and admission at, Uinta on August 25, 2015.

22.   A psychiatric evaluation was completed and a treatment plan was developed for J.O. shortly after her admission at Uinta.  She was diagnosed with generalized anxiety disorder and autism-spectrum disorder.  Short and long term goals were set for J.O.'s treatment with specific recommendations for therapeutic strategies and methods.

23.   Claims were submitted to UBH for coverage of J.O.'s treatment, and various Explanations of Benefits were sent to Uinta denying coverage on the basis of an alleged exclusion for services from an out-of-network provider.

24.   Nancy appealed the denial of coverage in a letter dated June 1, 2016.  First, Nancy pointed out that she was appealing the denial of all services between J.O.'s date of admission through the date of the letter.

25.   Nancy then discussed the exception found in the Plan relating to coverage for out-of-network services when there were no qualified network services available to provide the necessary care.  Nancy argued that she had attempted to locate a network provider for intermediate residential treatment services but had been unsuccessful.  She included a provider list with her letter to demonstrate that HP did not have any qualified network providers for the type of care J.O. needed.

26.   Nancy went on to provide a detailed chronological history of J.O.'s development and treatment, including citations to specific medical records, letters of recommendation from J.O.'s treating physicians and therapists, and reference to the Massachusetts Mental Health Parity statute which requires equivalent coverage for both mental and medical health care.

27.   Finally, Nancy pointed out that the Plan had, in fact, authorized and paid for other specialized out-of-network care for J.O. in the past.  Nancy included up-to-date

records from Uinta with her appeal and asked that a full and fair review be completed in connection with her claim.

28.     On June 30, 2016, HP wrote to Bob and Nancy and upheld the denial of coverage for J.O.'s treatment.  HP asserted in its denial there were no out-of-network benefits available under the Plan and that the out-of-network exception did not apply because J.O. did not meet criteria for residential treatment.  HP stated that, in its reviewer's opinion, J.O. met criteria for an acute inpatient admission in August of 2015.

29.     HP then went on to say that the denial was based on three different reasons: 1) the treatment at Uinta had not been preauthorized; 2) there were no out-of-network benefits available under the Plan; and 3) Uinta is not a residential treatment facility but a therapeutic boarding school.

30.     HP stated that the evaluation of J.O.'s condition was completed utilizing the UBH 2016 Level-of-Care Guidelines for Mental Health Residential Level of Care.

31.     On October 28, 2016, Nancy requested an external review of the claim.  She stated that she was disputing a number of statements made by HP and would present each as a separate argument.  First, she noted that the denial letter indicated that HP was aware of both the date of J.O.'s admission and the fact that she was still in treatment as of June 6, 2016, but the HP denial referenced only dates of service between October 25, 2015 and June 6, 2016.

32.     Nancy raised a second objection to the HP denial, pointing out that in spite of HP's inclusion of the list of committee members who had reviewed the claim, it had failed to identify any reviewer who had evaluated the medical necessity of J.O.'s treatment, and failed to include any information about its reviewers' expertise or qualifications.

She asked whether any of HP's committee members were board certified in adolescent psychiatry or whether any of them were even clinicians.

33.   Nancy then addressed the contradictory opinions provided to her about J.O.'s condition: specifically, that the appropriate level of care for J.O. at the time of her admission at Uinta was allegedly acute inpatient treatment for evaluation and stabilization in August of 2015, but that at no time did J.O. meet criteria for residential treatment.  If J.O. had been admitted for acute inpatient care, presumably at some point, she *would* have been ready to step down to a less intensive level of care at the residential level and would have met the criteria for residential treatment.

34.   Nancy argued that because HP believed J.O. was actually in urgent need of acute care, it could not maintain its insistence that the out-of-network exception did not apply to her claim.

35.   A next point in Nancy's appeal addressed the licensure for Uinta.  HP had asserted that Uinta is a therapeutic boarding school but Nancy provided a copy of Uinta's license with the State of Utah as a residential treatment center.  She also included with her appeal portions of the Utah State Code which address the requirements for such a treatment facility.

36.   Nancy then moved on to discuss the criteria and the fact that J.O.'s condition met those criteria.  The lack of any reference in the denial to medical records to support HP's assertion that J.O. did not meet the criteria was a demonstration of a lack of thoroughness in the review process.  Nancy provided citations to specific therapy notes to show the J.O. did meet criteria and that her treatment was medically necessary.

37.   The external reviewer issued its decision on February 2, 2017 and upheld the denial
of coverage for J.O.'s treatment.  The external reviewer stated that the basis for the
denial was:

> Residential treatment generally requires documentation weekly or at least
> monthly from a psychiatrist, which was not present.  . . . There is no evidence
> that [J.O.] received any special treatments that are not considered routine in
> most residential treatment programs.  Her condition did not appear to be so
> complex or unique that she could not be treated in most accredited therapy
> programs.

38.   The external reviewer did not mention any of the other reasons UBH or HP had raised
as bases to deny the claim, holding merely that the treatment was not medically
necessary.

39.   Nancy exhausted the prelitigation appeal process pursuant to the requirements of the
Plan and ERISA.

40.   The wrongful denial of coverage for J.O.'s medically necessary treatment has
damaged Nancy and Bob in the form of requiring them to pay over $250,000 for
J.O.'s medical care.

## CAUSE OF ACTION
### (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

39.   ERISA imposes higher-than-marketplace quality standards on insurers.  It sets forth a
special standard of care upon plan fiduciaries such as HP and UBH, acting as agents of
the Plan, to "discharge their duties in respect to claims processing solely in the interests
of the participants and beneficiaries" of the Plan.  29 U.S.C. §1104(a)(1).

40.   ERISA also underscores the particular importance of accurate claims processing and
evaluation by requiring that administrators provide a "full and fair review" of claim
denials.  29 U.S.C. §1133(2).

41.   The Defendants breached their fiduciary duties to the Plaintiffs when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in the interest, and for the exclusive purpose of providing benefits to, ERISA participants and beneficiaries and to provide a full and fair review of J.O.'s claims.

42.   The actions of HP and UBH in failing to provide coverage for J.O.'s medically necessary treatment at Uinta are a violation of the terms of the Plan and UBH's level-of-care guidelines.

43.   The actions of the Defendants, as outlined above, have caused damage to the Plaintiffs in the form of denial of payment for medical services rendered to J.O. in an amount exceeding $250,000.00.

36.   The Defendants are responsible to pay J.O.'s medical expenses as benefits due under the terms of the Plan together with prejudgment interest pursuant to U.C.A. §15-1-1, attorney fees and costs pursuant to 29 U.S.C. §1132(g).

WHEREFORE, the Plaintiffs seek relief as follows:

1.   Judgment in the full amount under the terms of the Plan that is owed for J.O.'s medically necessary treatment at Uinta, plus pre and post-judgment interest to the date of payment;

2.   Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

3.   For such further relief as the Court deems just and proper.

DATED this 4th day of December, 2017.

/s/ Brian S. King
Brian S. King
Attorney for Plaintiff

Plaintiffs' Address:
Essex County, Massachusetts